*H. C. Lilly & Son, for appellants.*

*J. J. Cornelison, for appellees.*

---

W. E. ROGERS, ET AL. *v.* MARION BURBRIDGE, COMMITTEE.

ROGERS *v.* MARION BURBRIDGE, COMMITTEE.

MARION BURBRIDGE, COMMITTEE *v.* W. E. ROGERS' EXR.

[Abstract Kentucky Law Reporter, Vol. 7—42, 48.]

**Widow's Funeral Expenses.**

When a testator appoints an executor and directs him to manage the business of the late partnership between himself and such executor and pay off the firm debts, and directs his executor while managing the partnership to liberally support the widow, and the widow soon thereafter dies the executor should pay all her funeral expenses and those holding obligations on which the decedent is bound as surety can not successfully resist such claims.

**Power of Executor to Buy Tombstone for Decedent.**

Where an estate is insolvent, the executor is not permitted to make an expenditure of $575.00 in buying a tombstone to mark

the grave of the testator. Such claim should not be allowed the executor as a credit.

## Pay of Executor for His Services.

An executor who serves as such and who has done no wrong should be paid for his services. He can not be deprived of reasonable compensation for such services and it is error for the chancellor to deprive him of them.

## Enforcing Vendor's Lien.

One who has sold land and retained in the deed a lien for the balance of purchase-money is not deprived of his lien by the death of the purchaser and has a right at any time to proceed to enforce such lien when the debt is due.

## Executor Can Not Purchase Property of Testator.

An executor having charge of the real estate of the testator for the purpose of paying debts has no power to become himself a purchaser of the estate in any proceeding so as to affect the rights of creditors.

### APPEAL FROM WOODFORD CIRCUIT COURT.

### June 11, 1885.

Opinion by Judge Pryor:

These two appeals will be considered together, and as the cases have, in fact, been consolidated, only one opinion is necessary to a determination of the questions made in both records.

The appeal of W. E. Rogers, as Executor of H. W. Carson, is from a judgment rendered by the Common Pleas Court against him, and the appeal of *Burbridge, Committe* v. *Rogers* is from the Circuit Court, both cases having been tried in the Woodford Circuit Court. H. W. Carson, appellant's testator, was the surety of O. A. Burbridge, who as committee had charge of the estate of Marion Burbridge, and Burbridge having misappropiated the funds held by him in his official capacity, an action was instituted in the Scott Circuit Court on behalf of the beneficiary, Marion Burbridge, against A. O. Burbridge and Carson, his surety, in which a judgment was rendered against them, and Carson, the surety, dying, by subsequent proceeding a much larger judgment was rendered against the appellant Rogers, as his executor, and against M. K. Rogers, who was the wife of the executor and the principal donee in the will of her father. Executions were issued on the

judgments and returned no property found, and the present action against Rogers, the executor, and his wife, the devisee, was instituted in the Woodford Circuit Court by Marion Burbridge, through his committee, seeking for a discovery of the estate of the testator, Carson, in the hands of his executor and devisee, and asking for a settlement of the accounts of the executor, and that certain real estate in the county of Woodford alleged to have belonged to the decedent, Carson, be subjected to the payment of and satisfaction of these judgments amounting to some eight or ten thousand dollars. It was alleged that Rogers, the executor, had secured some eight thousand dollars in personalty belonging to his testator, and that by the provision of the will of the latter his executor was to take charge of and carry on the partnership business in which the testator and his executor had been engaged during his life, and with the proceeds pay off the partnership indebtedness. The partnership consisted in the joint use and occupation by Carson and his son-in-law, Rogers, of two tracts of land in the county of Woodford, the conveyance under which they held the title determining the extent of the interest of each one of the just owners. The provisions of the will were attempted to be carried out by the executor, and for a period of six or eight years he cultivated the land and paid off a large portion of the indebtedness of the testator, including the joint liabilities of Carson and Rogers. After the testator had conferred upon his executor the power to manage and control the estate they held as partners, and all other estate for the purpose of paying the debts, he decided that as this management progressed his executor should give to his wife (the wife of testator) an ample and liberal support until the payment of said debts, and after all are paid the will proceeds to make the testator's daughter, who was the wife of Rogers, the residuary devisee. The commissioner, to whom was referred the case for settlement of the accounts of the executor, made his report, and by it or the judgment of the court, the executor falls in debt to the estate, and his appeal, viz.: that of Rogers' executor of *Carson v. Burbridge* and will be first noticed.

The court below disallowed the claim of the executor for the casket in which to bury the widow of the testator who did not long survive him, also reported claim of the undertaker, to which action the executor excepted. The testator, when he made his will, evidently believed that his estate was more than ample to pay off all

of his debts, and directed his executor to furnish his widow a liberal support, while he was undertaking the payment of partnership debts out of the estate, and not only after the debts were paid his widow during life was entitled, by the provision of the will, to the use and enjoyment of one of the farms. She made no renunciation of the will, but accepted its provisions that required this support, and made her the life tenant after the payment of debts. This debt of Burbridge was not anticipated or provided for, for the reason that it was not the debt of the testators, his liability having been created by becoming the surety. The executor in discharge of the trust confided to him was compelled to support the widow out of the estate, and with a devise of this beneficial estate it would be inconsistent with every principle of equity or justice to say that the widow died a pauper and must be buried at the expense of the county, with an estate ample in the hands of the executors to defray all these expenses connected with the liberal direction given to the executor for her support. Under such a devise and the facts surrounding this case, the executor is as much liable as such for the payment of the funeral expenses as the husband could have been if living. The claim, therefore, should have been allowed.

The next exception is the refusal of the court to allow the executor the amount he had paid the Griffin children. Carson was the guardian of those children, and his executor paid for them some four thousand dollars, after Carson's death, and in making a settlement with those children to ascertain what Carson's estate owed them, they were charged with, and Carson's estate credited by the amount the executor had paid.

This then should have been allowed, and the evidence of payment by the executor is conclusive from the fact that Carson's estate was credited by it. The executor should also have been allowed the accounts paid off by him for the support of the testator's widow. He was directed to do so by the will, and the appellee is holding him liable by reason of his failure to execute the trust, and therefore its execution in favor of others must be imposed as well as in favor of the appellee. Nor do we perceive why this devise to the widow for her support, which she accepted in lieu of dower, should not be enforced. So far as such claims were refused when properly proven, the court below erred. The court also erred in refusing the claim of Sublett and Watson. There was

no exception to it, and it should have been allowed. The claim of Muldoon & Co. for a tombstone, $575, was properly refused.

The estate was insolvent, and an expenditure of such a large amount, to designate the grave of the testator, must be made by the executor at his peril. The claim paid the National Bank and the Farmers' Bank was properly allowed. Whether to be paid in full was not determined by the court below.

In regard to the partnership existing between Carson and Rogers, it appears that shortly prior to Carson's death the partnership was dissolved, but it, nevertheless, appears that Rogers as executor undertook the execution of the will, and as such was liable for the rents to the extent of Carson's interests, and as the whole land was used in the payment of the partnership debts for the one-half of which Rogers, as the survivor, was liable, as between himself and Carson, we can not see how Rogers is injured by being charged with the rent of the two tracts.

He has never yet paid off the partnership debts, nor are we prepared to say that the language of the will applies to partnership debts alone, or if it does, we think with this character of trust the appellant, as executor, should be chargeable with rents. Nor is it material whether in the petition rents are claimed for the Todd farm.

The action is for a settlement of the trust, and all property invoked by it, whether mentioned in the petition or not, must be accounted for its use by the executor.

The principal error in this case consists in the failure to allow the executor compensation for his services. He had been charged with a reasonable rent and credited only by repairs made, and during a period of six or eight years he has been held to account for the proceeds of the trust estate with the interest, and we see no reason for requiring him to discharge this service gratuitously, or any action on his part that would authorize the chancellor to withhold compensation. His compensation should have been at least $500 per annum, to be deducted from the indebtedness, if any, by appellant.

As this settlement must be again made by the commissioners and as some few items have been allowed as credits to the executor when there is no proof, they should be allowed to be corrected and additional proof offered, but the basis for the settlement will exist as found in the commissioner's report adopted by the court below. So

many errors in fact exist in the settlement that it will be necessary to restate the accounts and in doing so either party should be allowed to cure any error that may exist in the allowance or rejection of any claims presented by or against the executor. The judgment against Rogers' executor is reversed that a proper settlement may be had.

The court below erred in the judgment rendered in the appeal of *Burbridge, Committee, v. Rogers,* in refusing any relief. The committee of Marion Burbridge has resorted to a Court of Equity for the purpose of making a discovery of accounts and subjecting the land owned by the testator in the county of Woodford to the payment of the debt. The two tracts of land are misdescribed in the petition and no lien existed as against any one for the security of appellant's claim.

It was, however, a lis pendens in so far as the executor was concerned, as the express purpose was to subject all the estate in the hands of the executor necessary to satisfy the demand. Process had been executed upon the executor and devisee and there was at the date of filing the petition nothing to prevent the chancellor from granting the relief sought. Grady who had sold the land to Carson and Rogers had his lien that was superior to the claim of any other creditor. It was a vendor's lien and the right of Grady to proceed at any time to enforce it can not be controverted. The refusal of the executor to pay the debt authorized Grady to bring his action to enforce his lien and whatever motive may have prompted the executor to decline making further payment can not affect Grady or his lien. He has been guilty of no fraud, but has only pursued the remedy afforded him for making his recovery.

The executor may have been anxious to avoid the payment of this security debt and doubtless because it deprived the wife and daughter of the inheritance left by her father and his refusal to pay originated doubtless from the fact that he saw that there would be nothing left of the estate unless he could purchase under Grady's judgment and obtain the land for less than its value. He stood in the position of trustee with the right to control the land for the purpose of paying the partnership debts. He was in the possession and had been for years attempting to remove the burden that was upon it. This was not regarded by the testator or by his executor as a liability for which the estate of Carson was bound. Still the appellant, by a judgment of the court, had established his claim and

when the executor purchased the land and he was a party to the suit under which all the estate of Carson could have been subjected to its payment. Under such circumstances he became the purchaser of this land at about one-half its value, and the word of the chancellor ascertaining that fact before confirmation of the sale, asks to advance the price from thirty-eight dollars to sixty dollars per acre. This was done by the committee for one unable to protect himself and when it appeared by the statement of the petition that the debt sought to be recovered was in danger of being lost. The chancellor ought to have authorized the committee to have satisfied Grady's debt, and place him in Grady's shoes that the land might again be sold.

It is not necessary in a case like this that actual fraud should be alleged or proven, nor do we think any actual fraud was practiced by Rogers. He felt his estate, or rather that of Carson, was not primarily liable for the Burbridge claim; that no consideration was received for it, and that out of the wreck of a valuable estate he would save what he could by requiring the land to be sold and becoming the purchaser. His position as a trustee for creditors, particularly when he had been sued for a settlement of his accounts and a sale of the realty belonging to his testator, precluded him from speculating in the property of the estate to the injury of the creditors, whether partnership or individual. We know of no rule of law or equity that will permit an executor who had charge of the realty of the testator for the purpose of paying debts whether partial or general, although his power over the realty is to rent it out, and when sued for a settlement of the estate, to become himself a purchaser of the estate in any proceeding so as to affect the rights of creditors.

The facts of this case as they are stated show that this executor purchased this estate after the suit had been brought to coerce this demand on Carson's estate, and that the executor in possession had the suit instituted by Grady, and made the purchase for greatly less than its value. Under such circumstances the sale should either have been set aside or the committee allowed to pay Grady's debt, the chancellor then ordering a resale to pay the debt.

Now, if, as counsel for the executor contends, the appellee, Rogers, was even innocent of the intention of Grady to sue, his purchase could avail him nothing as against this appellee.

He might and could stand in the place of Grady when paying

that debt and this is all the interest he could have acquired even against a creditor who had no peculiar claims upon the aid of the chancellor, if before there had been a confirmation, the facts had been disclosed.

If a sale had been ordered by the chancellor in the action of Burbridge against the executor for a settlement, the latter could not have purchased so as to affect creditors, nor will he be permitted while such a suit is pending to purchase at the suit of a creditor so as to cause a sacrifice of the estate. Executors and administrators are fully within the application of these principles, being considered in equity as trustees for creditors, legatees and heirs, and in that character disabled from purchasing at sale of either lands or chattels under a power from the will, or a power derived from the courts, for as they always have power and duty to sell lands under authority of the court so far as may be necessary to pay debts, the trust in its nature embraces both classes of property, and by virtue of these powers and duties both in respect to lands and personalty, they are substantially trustees and therefore disabled from purchasing for their benefit and to the loss of those for whom they are intended.

A purchase, therefore, direct or indirect, entire or partial, by one or more executors or administrators at their own sale, whether by a power in the will or under an order of court, will always be set aside on an application of any of the heirs or unsatisfied creditors, or other parties interested. 1 Leading Cases in Equity, 246.

It is admitted by the pleadings that the purchase of the land by the brother of the executor was for the benefit of the executor. This executor knew the condition of the estate and if he had declined to pay Grady, should himself file a bill for the settlement of his accounts and the sale of the realty. Such actions may be brought by the representative, legatee, distributee or creditor as provided by Sec. 1 of Chap. 3, Civil Code, and an action having been instituted to which the appellant, as executor, was a party, he was then in court representing the estate and his purchase inured to the benefit of creditors.

If Grady has received his money, he should not be compelled to refund it but the executor must be regarded as holding the land in trust for creditors, and the land should be sold.

If Grady has not received his money, there should be a resale, the executor accounting for the rents to the extent of Carson's

interest, and the court giving Grady the priority in the proceeds of the sale by reason of his vendor's lien. The judgment is reversed and remanded for proceedings consistent with this opinion.

Judgment *reversed.*

*Porter & Wallace, for Rogers.*

*Alvin Duvall, W. S. Darnaby, D. L. Thornton, for Burbridge's Committee.*

